Please call the next case for argument. Case number 24-2046 from the District of Western Missouri, United States v. Christopher Sledd. All right, Ms. Caldera. May it please the Court. I represent Mr. Christopher Sledd, and this case is about what the Supreme Court of the United States has dictated should be a straightforward and intuitive process. The government is going against common sense and fairness to complicate the Armed Career Criminal Act. To classify Mr. Sledd as an armed career criminal, the government tried to split two parts that were integral to proving each other. Two separate counts, but each one went to prove the other count in the same case. And they were simultaneous, relating to a drug conspiracy in the same geographical and the same jurisdictional area. Well, explain to me they were simultaneous. I mean, if I remember right, and if I'm remembering wrong, please tell me. Right, the conspiracy extended to a certain time period, I think maybe ending on a date in May, May 5th or something. That's correct. And the distribution charge occurred on May 5th, is that right? That's right. Okay, so I mean, on the 5th there were two crimes ongoing or committed at that point, but the conspiracy obviously extended before that, I think, right? That's correct. And your view is that's simultaneous, is that correct? It is. All right, work that out for me, because that doesn't necessarily follow for me. So I believe the dates were specifically June 1st of 1996 through May 5th of 1998. So up to and including May 5th of 1998. That's when they caught him red-handed. That's when they caught him on video and audio making a controlled buy to a confidential informant. Up to that point, the only evidence in the record, now this is from more than 20 years ago, so it's limited, was information from a Glenn Wilson who testified or gave information that Mr. Sled had sold to him on numerous occasions throughout the course of that conspiracy on a fairly regular basis. But until May 5th of 1998, as part of that conspiracy, it's not clear from the record that they could prove Mr. Sled's involvement. And similarly, they would not have been setting up that controlled buy, but for the investigation into the conspiracy. Well, I'm going to kind of pull it away, and I'm going to have a different discussion with opposing counsel. I think the answer is it kind of depends. Okay, so let me give you an example. Say you have a 10-year conspiracy started in, what is it, 2015, right? But you charge a possession, a possess with intent to distribute or a distribution charge today, 10 years later. I don't see how those are on the same occasion as one another. I hear what the court is saying. Yeah, I mean, so it depends. But the conversation I'm going to have with opposing counsel is suppose I meet with a street, somebody meets on a street corner with someone, and you say, hey, we're selling drugs on opposite street corners. Why don't we team up? And, oh, by the way, I'm going to show you how this is going to work. And instead of competing, somebody walks by and they sell drugs literally 30 seconds later. Well, it's really hard to say that's different occasions from one another, even though they're different crimes. And so isn't, I guess the question I have is, isn't the problem here mostly that the district courts seem to apply a bright line rule, seem to say that conspiracy and possession with intent to distribute are necessarily different occasions from one another, even if they're separated by literally 15 seconds? Yes, I completely agree. And I want to emphasize the importance, as the Supreme Court did in Wooten and in Erlinger, which came out just around our briefing schedule in this case, how fact-intensive these evaluations must be. And I do think it's inappropriate and inconsistent with case law to treat it as a bright line rule. I think the court should have gone into more detail about the previous charges. What specifically did the district court say that could be characterized as a bright line rule? I mean, what does the record show? The record shows that the court and the government both relied on Melby and Faulkner and said that because of those two cases, possession with intent to distribute and conspiracy, which we agree those are the two charges in all three matters, they all have to be treated the same. This was just an oral ruling by the court, wasn't it? I think you were counsel at the sentencing hearing.  I mean, there wasn't a lot of analysis, was there? I mean, the argument was made by, and I don't know if the AUSA was there at the hearing, too. But, I mean, there wasn't a lot of analysis on the record by the district court. Is that a fair, is my recollection accurate on that? That is a fair recollection, Your Honor. And I think it's important not just to summarize in conclusory statements the charges, like Melby and Faulkner had these two charges, so does Mr. Sled, ergo, which is, I think, how the district court treated it, they must be treated the same. It needs to be a fact-intensive investigation and inquiry. And I think the district court said something, I think it's clear, or something like that. Are you interpreting that as a clear distinction between the conspiracy and the distribution charge? Or, you know, what does the district court mean? I think you're saying that there's a bright line, that it's a clear distinction between the two. Is that how, do you need to interpret that statement along those lines? I believe your recollection is correct that the court used the term, this is clear. I disagree. I think it's about clear as mud that these facts are the same, because they're not. This was a controlled buy that was set up because of the information about the conspiracy. And that's very different from both Melby and Faulkner, where those defendants had drugs in their home. Could have been dealing with other people, we don't know from those records. But the fact that they had the same charges does not mean that the same analysis applies. I do believe it needs to be a fact-intensive inquiry under the case law. But you do agree that there's a temporal and geographic distinction, that a conspiracy and a separate distribution or possession with intent to distribute, that those can be on different occasions than one another. That's correct. I agree with that.  And I do think that it's important to note that there were geographic and jurisdictional distinguishing factors in both Melby and Faulkner. Those do not apply to Mr. Sled's case. Mr. Sled's possession with intent to distribute took place within the same exact geographic and court jurisdiction as the conspiracy charge. And that makes it more difficult and inappropriate to distinguish those as separate occasions. The government, I would like to note that when they summarized the three charges at issue that they are relying on to prove him as an armed career criminal, they quoted on page three to four of their brief that a CI purchased two ounces of crack. I note that that is inconsistent with the record that we have. The way it was summarized in the PSI to quote on page 14, paragraph 37, which is admittedly quite lengthy, the CI negotiated to purchase more than two ounces of crack while working for the law enforcement officer. And then for the second count, possession with intent to distribute, the defendant agreed to sell about a half a pound of crack. So it was not a completed buy as to count one, the conspiracy. And I think that's an important distinction as well. If there are no further questions, I would respectfully ask to cede my remaining time for rebuttal. Very good. Mr. Davidson. Thank you, Judge. May it please the court, my name is Justin Davids. I am an assistant U.S. attorney for the Western District of Missouri, and I represent the appellee, the United States of America. At the heart of Wooden is this idea that separate occasions means that a defendant has the opportunity to reflect and choose to end his criminal activity. I think that's what the Supreme Court was getting at when it was talking about this fact-intensive inquiry into trying to decide what the separate occasions were. And so in Wooden, we had the Georgia case where the defendant broke into a storage unit, robbed it, and then broke through the walls of each successive storage unit in robbing those. And I think that what the Supreme Court was getting at was, well, that's just essentially one robbery, right? Like, it's robbery of different people in different units, but there was no opportunity for reflection, really. What about, see, the problem I'm having is what about the hypothetical I gave, which is two drug dealers being on a street corner. They're basically trying to decide whether they're going to form a conspiracy. They've just formed a conspiracy, and they sell drugs 15 seconds later. Yeah, I agree that that is something that under Wooden will take some analysis, and after Erlinger, that's something that a jury is going to have to wrestle with. See, and I think those are clearly the same occasion. I mean, I think under Wooden, I mean, yeah, it's a fact-intensive inquiry, because you do have similar intertwined conduct giving rise to the offenses. They share a common scheme or purpose. But timing-wise and geography-wise, the other two important factors, I think those clearly say that those are the same. And I think that Melby, and I forget the Faulkner, suggest that just because one's a conspiracy and one's a substantive crime, that they're almost always different. There's one line in Melby that suggests differently, but our case law seems to be almost a blanket bright line on that. Yeah, I read Melby and Faulkner to be more in line with Wooden in the sense that Melby and Faulkner recognize that the substantive count is a completed event. It has a different start, and it has a different end, and then it completes, and then it's part of this conspiracy. But what I really want to get to, though, is there seems to be some confusion about the relationship between a conspiracy and the possession with intent to distribute or to distribute count, which we refer to as substantive drug counts. The crime of conspiracy is the agreement itself. Once that occurs, then the crime has been committed, right? And even though 846 doesn't require overt acts, this court has explained in Bell v. United States, which is admittedly a fairly old case, but the law is still good. In relation to statutes like 371 that do require overt acts, it says, the provision of the statute that there must be an act done to affect the object of the conspiracy merely affords a locus penitentiae. I looked that up. So that before the act is done, one or all of the parties may abandon their design and thus avoid the penalty prescribed by the statute. And that's talking about the same thing here that the government is arguing, is the opportunity to withdraw, right? So in some statutes, the Congress has built that in, the opportunity to withdraw, and if you don't, then you're held responsible for the conspiracy. For drug conspiracy purposes, Congress has decided to penalize as soon as the drug conspiracy is agreed to, right? I agree with that completely, everything you said, and I think that's an important factor under the Wood analysis. But I've got to be honest that I'm very concerned that the court thought that Faulkner and Melby provided a bright line rule. If you read what the district court said, I think the case law supports, and I hate to use the word clearly, which is what Judge Cove is, but I think the facts here are consistent with what these courts have held in these two cases. And I understand what your distinguishing factor, I think there's supposed to be an is there, but I think the court's law, notwithstanding, supports what is factually in this case. I'm kind of paraphrasing, because I think, first of all, that's not much analysis, but I actually read that as pretty close to a bright line rule, because nowhere in there is either any discussion of the earlier factors we gave, and certainly no discussion of the Wooden factors. So wouldn't the appropriate disposition here be to send this case back and say, hey, take another look at this district court, apply the Wooden factors, you might come out the same way, you might not. I'm not sure to what end that that would be successful. I mean the plea agreement itself listed the convictions and the dates of conviction and the dates of the conspiracy and the date that this distribution occurred on. Specific dates or on or about type of? The plea agreement. Because there's a huge difference between the two. There is to some extent, Your Honor, but let's see. Plea agreement. It says that the defendant was convicted of conspiracy to distribute and possessed with intent to distribute at least 50 grams of a mixture and substance containing a detectable amount of cocaine base for an offense that occurred beginning on June 1, 1996 and continuing until at least May 5, 1998. That's a pretty big period. Doesn't that go against what you were just arguing? That means that the conspiracy began on June 1, 1996. Could have, or it could be like an on or about type of thing. I mean my point is have the district court do the analysis in the first instance. Because like I said, it appears to me that if the district court did a bright line rule, I think what the government then is arguing this is harmless air. Because at that point you can just look at the plea agreement. And maybe we can't. We'll have to look at that. But the point is that I think that the evidence here that the court had, they could have made the decision combined with the PSR that the defendant had an opportunity to withdraw before committing the substantive act from the conspiracy. I think you touched on it earlier. Do you think that the district court here drew a bright line based on those cases, Melby and the other one? Because there's just not much there. No. I think the court was following Melby and Faulkner. I think that Melby and Faulkner, they do discuss Willoughby and they explain that the difficulty of Willoughby in the time issue makes those factors a little bit different in the conspiracy context. So I do think that that's incorporated into that analysis for the district court's purposes here. I don't think the court drew a bright line rule. I think that in looking to Melby and to Faulkner, it recognized that the separateness of the substantive was that it started after the conspiracy was in effect and then was completed, and that's discreet from the conspiracy itself. And I still think that that is consistent with Underwood. I do think if the district court would have said that, we wouldn't be in the predicament we're in now if there would have been some analysis there. I just wonder, again, whether there's enough, because you are. You're doing a good job of filling in the blanks for the court, but usually we want the court to say that unless we're in harmless air land. Right. And, again, I do think that the court would reach the same conclusion if it was given the opportunity to explain it further. I don't think the court was thinking differently than this when it made its decision. I don't think that Faulkner and Melby really are— I don't think that they have been abrogated by Wooden to that extent. Well, I don't know about that. Actually, I think Faulkner may have been. Melby's got a line in there that seems to predict Wooden, but it's clear to me that Wooden is anti-brightline rule, absolutely anti. In fact, they were rejecting brightline rules from other circuits. So to the extent either one of those cases has a brightline rule, and I think Faulkner does. But I think that this court has never had a brightline rule, despite what the Supreme Court said about Abbott and Wooden. I think that they mischaracterized Abbott and Wooden. Maybe. I was just going to say, Faulkner—sorry, can I—  Faulkner actually, I think, almost comes pretty close to saying the separate distribution or possession is— the distribution or possession is necessarily separate from the conspiracy because there's different acts. And I just think that's wrong. I think that's a brightline rule because I think it depends, based on Wooden, based on the amount of time, the geography, the common scheme or purpose. And so I think there's some loose language that would have to be cleaned up in some of those prior cases. Sure. I understand that, Your Honor. If there are no other questions, the government respectfully requests that this court affirm the judgment of this report. Thank you. Ms. Caldera, your rebuttal. May it please the Court. When the Court goes back and looks at the plea agreement, it is lacking in details. It's on page 3 of the plea agreement, and it does, like the government cited, just an offense occurred beginning on June 1, 1996 and continuing until at least May 5, 1998. It was a conspiracy to distribute and possess with the intent to distribute at least 50 grams of cocaine, basically. And then the second one is summarized in the following paragraph, just repeating the charge language itself and no details at all about the underlying charge itself. And while we're not asking this Court to overturn either Melby or Faulkner, I do note that the kind of analysis, when we're comparing a present case to the Court's precedent, would ask us to go back and look at the transcripts, the trial transcripts, the evidence that was presented in each of those cases, above and beyond what is summarized in the Court's written opinion. And that's not practical. I believe it's practical in a present case for the government to be required to go back and say, here's how we use this evidence of this controlled sale, and here's how we set up that controlled sale. Then we would have the evidence we need for the Court to make a decision whether these are separate. Are you asking for a reversal and then a remand? Or do you think we should just reverse it and say, there's no enhancement here? We would certainly appreciate a reversal for no enhancement, but I do think the record could benefit from further information.  Ultimately, that would be our goal. But we are asking that the Court remand for resentencing for more information. But practically, I do believe the government's going to have difficulty in cases, not just Mr. Sled's case, but in similar matters where we're trying to go back into records from more than 20 years prior. Can the government rely on the PSR if it went back? And this gets to the Stoll question, because there you said you could rely on it for purposes of the jury not hearing it. Here we don't really have an Erlinger issue because you have a plea agreement anyway for jury trial. So my question is, could the government then use that to prove it, the PSR, the things that are unobjected to? I believe so, Judge. And the PSI in this matter relies on the PSI from the 2001 conviction, and I think that's fair game, that's possible, but those are going to be limited. And in this case, it is still limited because we don't have the PSI from 2001. And I would just emphasize, it's not supposed to be substantive acts in furtherance of the conspiracy, and from the record we have, that's what these two counts were. We thank the court for your time and respectfully ask you to find for the appellant. Thank you. We would like to also express our appreciation to you, Ms. Caldera, for your service under the Criminal Justice Act.